**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID MARK WILSON,<br>Plaintiff,<br>v.<br>CONNOR HARRISON, ASSISTANT DISTRICT ATTORNEY, et al.,<br>Defendants. | CIVIL ACTION NO. 3:26-CV-00057<br><br>(LATELLA, M.J.) |

## MEMORANDUM

Plaintiff filed three Motions requesting that the Court appoint counsel in this matter. In support of those motions, Plaintiff alleged, among other things, that he is not competent. Based upon that allegation, we were required to undertake an analysis pursuant to Federal Rule of Civil Procedure 17(c). New information indicates that Plaintiff has been deemed competent by a different court. Accordingly, we are satisfied that we may conclude our Rule 17(c) inquiry. Further, we find no basis to appoint counsel at this stage of the litigation. Accordingly, for the reasons set forth herein, we will deny Plaintiff's motions without prejudice to his ability to again request the appointment of counsel at a later time, if necessary.

## I. Procedural Background

Plaintiff filed a Complaint on January 13, 2026 against Defendants Assistant District Attorney Connor Harrison, Judge Michael J. Barrasse, ("Judge Barrasse"), Bernard Brown, Judge James Gibbons ("Judge Gibbons") and District Attorney Brian Gallagher ("DA Gallagher"). (Doc. 1). Judge Barrasse and Judge Gibbons filed executed waivers of service on February 18, 2026. (Docs. 8, 9). On February 25, 2026, Plaintiff filed a Motion to Appoint Counsel. (Doc. 11). On March 9, 2026, he filed a Motion for an Order Requiring the US Marshals Service to Serve Summons and Complaint ("Motion for Service"). (Doc. 13). March 16, 2026, we entered a Memorandum and Order granting, in part, Plaintiff's Motion for Service. (Docs. 15, 16). On March 19, 2026, Judge Barrasse and Judge Gibbons filed a Motion to Dismiss. (Doc. 18). Plaintiff filed a second Motion to Appoint Counsel and supporting brief on March 23, 2026. (Doc. 19, 20). Plaintiff filed a Motion for Extension of Time for Service of Process on March 23, 2026 (Doc. 21) which we granted on March 25, 2026 (Doc. 22).

On March 25, 2026, we entered a Memorandum and Order in response to Plaintiff's averments in in his Motion for the Appointment of Counsel indicating that he had been deemed incompetent. That information triggered our duty to conduct an analysis pursuant to Federal Rule of Civil Procedure 17(c). Accordingly, we entered an Order on March 25, 2026 directing Plaintiff to provide to the Court for *in camera* review any documentation from a public agency or court of record that he has been adjudicated incompetent, or (2) documentation from a medical provider that the type of mental illness for which he is being treated renders him legally incompetent, to the extent such documentation exists. (Docs. 23, 24).

Judge Barrasse and Judge Gibbons filed a brief in support of their Motion to Dismiss on March 30, 2026. (Doc. 25). On April 7, 2026, in accordance with our March 25, 2026 Order, Plaintiff submitted documentation for *in camera* review regarding his competency. Plaintiff filed a request for an extension of time to respond to the Motion to Dismiss on April 13, 2026 (Doc. 26) which we granted on April 17, 2026 (Doc. 27). Plaintiff filed a Second Motion for Extension of Time to File Brief In Opposition (Doc. 28) on April 17, 2026, which we

denied as moot on May 6, 2026. (Doc. 33). Plaintiff file a Second Motion for U.S. Marshals Service (Doc. 32) on May 4, 2026.

On May 11, 2026, he filed his third Motion to Appoint Counsel (Doc. 34) together with a supporting brief (Doc. 35), again raising the issue of competency. DA Gallagher filed an executed waiver of service on May 18, 2026. (Doc. 37). On that same date, he filed a Motion to Dismiss and supporting brief. (Docs. 38, 39).

On June 9, 2026, we entered an additional Order relating to our Rule 17(c) analysis. (Doc. 42). In that Order, we noted that the documentation that Plaintiff provided to the Court for *in camera* review indicated that Plaintiff underwent a competency examination in December 2024 and was deemed incompetent to proceed to trial. At that time, a Court Order from the Lackawanna County Court of Common Pleas directed Plaintiff to be transported to the Norristown State Hospital for restoration of competency. However, additional documentation submitted by Plaintiff indicated that as of April 26, 2025, Plaintiff had not been transported to that facility due to his failure to cooperate with necessary preadmission testing. The documentation also indicated that a status conference was scheduled for

February 26, 2026 in the Lackawanna County Court of Common Pleas regarding Plaintiff's competency. Accordingly, we Ordered Plaintiff to provide the Court with an update regarding his current competency, including, to the extent such documentation exists, any transcript or order from the February 23, 2026 status conference in the Lackawanna County Court of Common Pleas regarding Plaintiff's competency; and to the extent Plaintiff was not transferred to Norristown State Hospital, an explanation as to why such transfer did not occur. (Doc. 42). On August 14, 2026, Defendant Brown filed a Motion to Dismiss and supporting brief. (Docs. 44, 45). Plaintiff filed a Motion for Extension of Time to Respond to Defendant Brown's Motion to Dismiss on August 24, 2026 (Doc. 46) and filed a response in opposition on September 8, 2026 (Doc. 47). Plaintiff did not file any response to our June 9, 2026 Order requesting additional information relating to the current status of his competency.

## II. Legal Standard

In this Memorandum, we consider the application of Federal Rule of Civil Procedure 17(c) as well as the standard for appointment of counsel.

**A. Federal Rule of Civil Procedure 17(c)**

Federal Rule of Civil Procedure 17(c)(2) provides that:

> [a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

Fed. R. Civ. P. 17(c)(2). While Rule 17(c)(2) imposes a mandatory obligation upon the courts, there is "no suggestion which factors should trigger the court's duty of inquiry as to whether the individual at issue is competent." *Powell v. Symons*, 680 F.3d 301, 303 (3d Cir. 2012). Accordingly, "responsibility for Rule 17 appears generally to be left to the discretion of the district courts." *Id.*

The Third Circuit has instructed that "a district court need not inquire *sua sponte* into a pro se plaintiff's mental competence based upon a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity." *Id.* at 307. Rather, the duty of inquiry involves a determination of whether there is "verifiable evidence of incompetence." *Id.* For instance, the Third Circuit clarified that a district court would abuse its discretion if it failed to consider whether

Rule 17(c) applied "[i]f a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Id.* (quoting *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 201 (2d Cir. 2003)). A district court "must satisfy its duty of inquiry before it proceeds to determine if Rule 17 applies." *Id.*

A district court must invoke Rule 17 consider whether to appoint a representative for an incompetent person when there is "verifiable evidence of incompetence." *Mondelli v. Berkeley Heights Nursing and Rehabilitation Center*, 1 F.4th 145, 149 (3d Cir. 2021). Verifiable evidence of incompetence includes (1) "evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent," or (2) "evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Id.* (quoting *Powell v. Symons*, 680 F.3d 301, 303 (3d Cir.

2012)). The decision as to whether to appoint a representative "rests with the sound discretion of the court." *Richards v. Duke University*, 166 F. App'x 595, 598 (3d Cir. 2006).

"While Rule 17(c) does not provide a standard for determining competency, Rule 17(b) provides that the capacity of a party to sue or be sued shall be determined by the law of the party's domicile." *Tejada v. DelBalso*, No. 3:18-cv-01096, 2018 WL 6047081, *1 (M.D. Pa. Nov. 19, 2018) (citing *Richards v. Duke Univ.*, 166 Fed. App'x 595, 598 (3d Cir. 2006) (per curiam)); *see also* Fed. R. Civ. P. 17(b). Under Pennsylvania law, an "incapacitated person" is defined as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety." *Id.* (citing Pa. R. Civ. P. 2051); *see also Powell v. Symons*, 680 F.3d 301, 308 n.6 (3d Cir. 2012). "The purpose behind appointing a guardian is to protect the interests of the incompetent person, not the defendants." *Richards*, 166 F. App'x at 599. Appointment of a guardian ad litem is inappropriate where the purportedly incompetent party is "clearly able to protect [his

or] her interests in [the] litigation" and "understand the meaning and effect of the legal proceedings [he or she] has instituted." *Id.* (brackets in original) (quoting another source).

**B. Motion to Appoint Counsel**

Neither the Supreme Court nor the Third Circuit has recognized a constitutional right to counsel for civil litigants. *Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997). Civil litigants likewise lack a statutory right to appointed counsel. *Id.* (citing *Tabron v. Grace,* 6 F.3d 147, 153 (3d Cir. 1993)). Despite the lack of a constitutional right to counsel, 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to employ counsel." Such appointment is discretionary,

In considering whether to appoint counsel for a litigant in a civil case, the court should first consider whether a plaintiff's claims have some merit in fact in law. *Id.* If so, the court should go on to consider non-exhaustive factors, which should serve as a "guidepost," including:

> (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether

> the case will require the testimony of expert witnesses; (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Id*. Additionally, we are cognizant of the Third Circuit's directive that courts should not request counsel under Section 1915(d) indiscriminately. *Tabron*, 6 F.3d at 157. We must be mindful of "the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights cases filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation." *Tabron*, 6 F.3d at 157.

## III. Discussion

We will first proceed with our analysis under Rule 17(c) and then turn to Plaintiff's Motions to Appoint Counsel.

### A. Rule 17(c) Analysis

As noted earlier, Plaintiff indicated in his Motion to Appoint Counsel that he was deemed incompetent. (Doc. 19). Accordingly, our duty to conduct a Rule 17(c) analysis was triggered. While Plaintiff provided documentation in response to our Order regarding his

competency for *in camera* review, the documentation was insufficient to enable us to reach a conclusion regarding Plaintiff's current competency. More specifically, we noted that the documentation indicated that Plaintiff was deemed incompetent in December 2024 and ordered to be transferred to Norristown State Hospital for the restoration of competency. However, the documentation indicated that as of April 2025, Plaintiff had still not been transferred to that facility and Plaintiff's current competency status was unclear. Accordingly, we sought additional information from Plaintiff. (Doc. 42). Plaintiff did not provide any additional information in response to that Order.

"If—as here—'there has been a legal adjudication of incompetency ... that is brought to the court's attention, [Rule 17] is brought into play.'" *Wright v. Wenerowicz*, No. 2:14-CV-00245, 2018 WL 1081982, at *3 (E.D. Pa. Feb. 28, 2018) (citing *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012) (quoting *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986)). Competency is determined by reference to state law, and "[u]nder Pennsylvania law ... once a person is adjudicated incompetent, [he] is deemed incompetent 'for all purposes until, by court order, the status of incompetency is lifted.'" *Id.* at 308 (quoting *Syno v. Syno*, 594

A.2d 307, 310 (Pa. Super. Ct. 1991)).

A review of the criminal docket in the Lackawanna County Court of Common Pleas case indicates that on May 22, 2026, Plaintiff was "found to be competent."[1] It appears Plaintiff pled *nolo contendere* to a count of recklessly endangering another person. Because the status of incompetency was lifted by the Court of Common Pleas in Lackawanna County, we are satisfied that Plaintiff's competency has been restored. We further add that Plaintiff has filed numerous motions to the docket suggesting that he is capable of representing his own interest in this litigation. Accordingly, there is no basis to appoint a representative for plaintiff pursuant to Fed. R. Civ. P. 17(c).

**B. Appointment of Counsel**

At this juncture we do not find it necessary to appoint counsel. We reach this conclusion after proceeding through the analysis set forth in *Parham*. 126 F.3d at 457. As an initial matter, we must consider

[1] Courts are permitted to take judicial notice of docket entries filed in separate litigation proceedings. *See, e.g., Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1200 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992); *FCS Cap. LLC v. Thomas*, 579 F. Supp. 3d 635, 647 (E.D. Pa. 2022).

whether Plaintiff's claims have some merit in fact or law. *Parham*, 126 F.3d at 456. While we note that each Defendant has now filed a Motion to Dismiss, for the sake of completeness, we will assume *arguendo*, that Plaintiff's claims have some merit in fact or law and proceed with our analysis.

First, we find that Plaintiff has sufficiently presented his case. Plaintiff organized the statement of facts in 41 separate paragraphs and included 4 distinct legal claims, identifying which Defendants each claim is raised against. (*See* Doc. 1).

As to the second factor, while Plaintiff argues that this is a complex case, we are not persuaded that the legal issues are so complex as to warrant the appointment of counsel. The contours of the constitutional claims raised by Plaintiff are well-established.

The third factor considers the degree to which a factual investigation will be necessary and the ability of the plaintiff to pursue such investigation. While discovery may be necessary in this matter, Plaintiff has established that he is able to advocate for himself and raise issues with the Court when necessary. We are satisfied that

Plaintiff will be able to pursue any investigation required to pursue his claims.

The fourth factor considers to what extent the case will turn on credibility determinations. Credibility may be an issue with respect to some of the claims raised by Plaintiff, but before even commencing discovery, Plaintiff appended 33 exhibits to his Complaint. Accordingly, it appears as though there will be additional evidence relevant to Plaintiff's claims.

Regarding the fifth factor, at this time, it is not clear that Plaintiff's claims will require expert support.

As to the final factor, it does not appear that plaintiff can attain and afford counsel on his own behalf. Plaintiff states that he is indigent and we have no reason to doubt the veracity of his allegations. (Doc. 20 at ¶ 11). While this factor may weigh in favor of appointment of counsel, on balance, consideration of the *Parham* factors weighs against appointment of counsel at this time. Accordingly, Plaintiff's Motions to Appoint Counsel (Docs. 11, 19, 34) will be denied without prejudice to

Plaintiff to request appointment of counsel again if necessary at a later time. An appropriate order follows.

BY THE COURT:

**/s/ Leo A. Latella**
LEO A. LATELLA
United States Magistrate Judge